IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRINA A. CORSON, individually and as Administratrix of the Estate of KRISTEN E. CORSON,** : <br> : <br> **Plaintiff,** : <br> v. : <br> : <br> **CLEARFIELD COUNTY,** : <br> **OFFICER JANELLE MESCALL,** : <br> **OFFICER TIM RYEN,** : <br> **WARDEN GREGORY COLLINS,** : <br> **OFFICER NOVA DALE,** : <br> **OFFICER LEO CLEVELAND,** : <br> **OFFICER HEIDI MARKS-IBBERSON,** : <br> **OFFICER TYLER KNEPP,** : <br> **OFFICER AUSTIN BARRETT,** : <br> **OFFICER NANNETTE RENCHEN,** : <br> **JOHN AND JANE DOES 1-20,** : <br> : <br> **Defendants.** : <br> : | CIVIL ACTION <br><br> No. 3:21-cv-00161-SLH <br><br><br> JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

### NATURE OF ACTION

1. This is an action for damages and other relief arising from the death of Kristen E. Corson, who died on October 11, 2019, while she was an inmate held in Clearfield County Jail in Pennsylvania. It is brought under 42 U.S.C. § 1983 and the laws of Pennsylvania.

### JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

3. Jurisdiction lies over state law claims based on the principles of supplemental

jurisdiction, as codified at 28 U.S.C. § 1367.

4. The amount in controversy exclusive of interest and costs exceeds the sum of one hundred fifty thousand ($150,000.00) dollars.

5. All claims herein arose within the jurisdiction of the United States District Court for the Western District of Pennsylvania and involve Defendants who reside or work within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## PARTIES

6. Trina A. Corson is an individual citizen of the Commonwealth of Pennsylvania and County of Clearfield, residing therein at 1087 Main Street, Coalport, PA ("Plaintiff").

7. Kristen E. Corson was born on May 13, 1983 and passed away intestate on October 11, 2019 ("Decedent"). Decedent is survived by her parents and two minor children, M.S. and G.S., ages 4 and 2, respectively. M.S. and G.S. are the heirs of Decedent's estate.

8. Plaintiff is Decedent's mother and was appointed the Administratrix of her estate on July 19, 2021 by the Register of Wills of Clearfield County. She is also the legal guardian of Decedent's children.

9. Defendant County of Clearfield ("Clearfield County") is a governmental unit organized under the laws of Pennsylvania. It is a "person" as the term is used in 42 U.S.C. § 1983. Among other functions, Clearfield operates, controls, and promulgates policies and procedures for the activities of the Clearfield County Probation Department ("CCPD") and the Clearfield County Jail ("CCJ").

10. Defendant Tim Ryen was, at all times material hereto, an employee of Clearfield County and an Adult Probation Officer with the CCPD who had personal involvement in the events

giving rise to this Complaint ("Officer Ryen").

11. Defendant Janelle Mescall was, at all times material hereto, an employee of Clearfield County and an Adult Probation Officer with the CCPD who had personal involvement in the events giving rise to this Complaint ("Officer Ryen").

12. Defendant Gregory Collins was, at all times material hereto, an employee of Clearfield County and Warden of CCJ ("Warden Collins"). Warden Collins occupied a supervisory position and was responsible for promulgating, implementing, and maintaining CCJ's policies and procedures.

13. Defendant Nova Dale was at all times material hereto employed by Clearfield County as a corrections officer at CCP who had personal involvement in the events giving rise to this Complaint ("Officer Dale").

14. Defendant Leo Cleveland was at all times material hereto employed by Clearfield County as a corrections officer at CCP who had personal involvement in the events giving rise to this Complaint ("Officer Cleveland").

15. Defendant Heidi Marks-Ibberson was, at all times material hereto, employed by Clearfield County as a corrections officer at CCP who had personal involvement in the events giving rise to this Complaint ("Officer Marks-Ibberson").

16. Defendant Tyler Knepp was at all times material hereto employed by Clearfield County as a corrections officer at CCP who had personal involvement in the events giving rise to this Complaint ("Officer Knepp").

17. Defendant Austin Barret was at all times material hereto employed by Clearfield County as a corrections officer at CCP who had personal involvement in the events giving rise to this Complaint ("Officer Barret").

18. Defendant Nannette Renchen was at all times material hereto employed by Clearfield County as a corrections officer at CCP who had personal involvement in the events giving rise to this Complaint ("Officer Dale").

19. The John and Jane Doe defendants are individual corrections officers, members of CCJ's staff, CCPD officers, and/or members of CCPD's staff who knew or should have known of Decedent's serious medical need and were in a position to provide her services to address her medical needs but failed to do so.

20. The defendants identified in paragraphs 10-11 are hereinafter collectively referred to as the "Defendant Probation Officers."

21. The defendants identified in paragraphs 13-18 are hereinafter collectively referred to as the "Defendant Correction Officers."

## FACTS

22. On October 9, 2019, at or around 12:00am, Decedent left Officer Ryen, her probation officer, a voicemail explaining that she was vomiting and believed that she had the flu.

23. On the same day, at or around 9:00am, Officer Ryen returned Decedent's call during which Decedent again explained that she was still severely ill and believed she had the flu.

24. On October 10, 2019, at or around 10:50am, the Defendant Probation Officers conducted a "field visit" at Decedent's home.

25. At this time, Decedent was asleep while her father watched her two infant sons at Plaintiff's request since Decedent was severely ill.

26. At the request of the Defendant Probation Officers, Decedent's father woke her to inform her that the Officers were present.

27. Upon exiting her room, the Defendant Probation Officers observed that Decedent

was "very disoriented and lethargic and had slurred speech."

28. Decedent also exhibited labored breathing and other visible signs of a serious medical need which was apparent to the Defendant Probation Officers but were ignored.

29. Decedent informed the Defendant Probation Officers that she was having difficulty breathing and did not feel well which was consistent with what she had previously communicated to Officer Ryen on the phone the day before.

30. Decedent denied illegal drug use and there was no evidence of the presence of illegal drugs or paraphernalia in Decedent's home.

31. The Defendant Probation Officers demanded that Decedent produce a urine sample for a drug screening, but Decedent explained to the Defendant Probation Officers that she was physically unable to do so as a result of her obvious serious medical need.

32. The Defendant Probation Officers only allowed Decedent 30 minutes to produce a urine sample.

33. The Defendant Probation Officers accused Decedent of willfully refusing her drug screening and transported her to CCJ rather than to a medical provider or allowing her additional time to produce a urine sample.

34. At or around 11:30am, during Decedent's transportation to CCJ, Officer Mescall contacted Director Burkhart, to inform him of the events and Decedent's condition.

35. Director Burkhart directed the Defendant Probation Officers to transport Decedent to CCJ, but to take her to the hospital if CCJ would not accept her.

36. The Defendant Probation Officers arrived at CCJ at or around 12:30pm with Decedent.

37. While waiting to enter the CCJ's grounds, Decedent communicated to the

Defendant Probation Officers that she felt sick and was going to vomit.

38. Upon entering CCJ's garage, Decedent was removed from the Defendant Probation Officers' vehicle and placed in handcuffs and shackles by CCJ staff.

39. At this time, Decedent was in obvious need of emergency medical attention.

40. The Defendant Probation Officers, although aware of Decedent's serious medical need, did not inform CCJ's staff of the same, but instead informed them that Decedent was unable to produce a urine sample and asserted that she was under the influence of narcotics.

41. At or around 1:00pm, Officer Ibberson-Marks and the other John and Jane Doe Defendants admitted Decedent into CCJ even though it was obvious that Decedent needed emergency medical attention.

42. Decedent complained of her condition to Officer Ibberson-Marks and other John and Jane Doe Defendants upon her arrival, but Decedent's serious medical needs and complaints were ignored.

43. In fact, Officer Ibberson-Marks performed a search of Decedent's person, found her to be "very lethargic and slow in movement," but placed Decedent in the "holding tank" with several other inmates without ever performing a medical evaluation screening, or requesting that one be done.

44. Upon information and belief, CCJ's formal policies and procedures required Officer Ibberson and other John and Jane Doe Defendants to deny Decedent entry into CCJ as a result of her obvious serious medical condition, and either transport her or arrange for her transportation to a medical provider for further evaluation and/or treatment; this was not done.

45. In the "holding tank," Decedent continued to demonstrate obvious signs and symptoms of a medical emergency which the Defendant Correction Officers and the John and Jane

Doe Officers were aware of and witnessed but ignored and/or failed to address.

46. At the same time, Decedent communicated to the Defendant Correction Officers and John and Jane Doe Officers on numerous occasions that she was not feeling well and was having difficulty breathing which they ignored and/or failed to address.

47. At or around 1:45pm, Decedent was transferred into "holding cell 2" with 6 other inmates.

48. In "holding cell 2," Decedent continued to demonstrate obvious signs and symptoms of a medical emergency which the Defendant Correction Officers and the John and Jane Doe Officers were aware of and witnessed but ignored and/or failed to address.

49. At the same time, Decedent communicated to the Defendant Correction Officers and John and Jane Doe Officers on numerous occasions that she was not feeling well and was having difficulty breathing which they ignored and/or failed to address.

50. At or around 12:03am, Decedent was observed by the Defendant Correction Officers and John and Jane Doe Officers on a surveillance camera crawling from her mattress to the bathroom area of "holding cell 2."

51. No Defendant Correction Officer or John and Jane Doe Officer attempted to help or check on Decedent when they witnessed her crawling to the bathroom but instead ignored her serious medical needs and allowed her to suffer.

52. Decedent would never make it out of the bathroom alive.

53. Nearly 3 hours later, at or around 2:45am, while Officer Cleveland was performing an inmate count, he observed that there were only 6 inmates in "holding cell 2" and that Decedent's mattress was unoccupied.

54. Officer Cleveland woke the other inmates in "holding cell 2" and asked if someone

was in the bathroom to which one inmate responded that "there was a girl using the bathroom . . . [and] that she was naked on the floor . . ."

55. Officer Cleveland radioed Officer Dale who entered "holding cell 2" and "nudged [Decedent] a few times in an attempt to wake her up[,]" but Decedent was dead in a puddle of her own urine.

56. Officer Cleveland radioed the control room operator, Officer Renchen, to call 911 and Warden Collins.

57. Thereafter, Officers Cleveland, Knepp, Dale, and Barrett began resuscitation efforts, but it was too late as Plaintiff had been dead for at least 1 hour.

58. EMS arrived to CCJ at or around 3:07am and transported Decedent to Clearfield County Hospital where she was pronounced dead upon her arrival at 3:29am by Ernest Jones, MD.

59. Upon Decedent's arrival, Dr. Jones noted that Decedent was cold, pale, and that her upper body was in rigor mortis which indicated that she died at least 2 hours before her arrival.

60. At or around 3:30am, Warden Collins called Plaintiff to inform her of Decedent's death and also provided that "we worked on her for 45 minutes before the EMTs took her."

61. Warden Collins admitted to Plaintiff that Decedent had not even been processed and that "she should not have been taken to the jail in the first place."

62. Following an autopsy, the Clearfield County Coroner determined that Decedent's cause of death was pneumonia.

63. Decedent's toxicology report revealed no illegal narcotics in her system.

64. Before her death, Decedent suffered extreme conscious pain and suffering, terror of death and emotional distress—all normal consequences a pneumonia death.

65. As a result of her death, her estate suffered other damages, including but not limited

to loss of earnings and destruction of earning capacity, loss of life's pleasures, loss of support, and all other damages cognizable under Pennsylvania's "Survival" and "Wrongful Death" statutes.

66. Decedent's death and related damages were caused by the culpable conduct of all defendants, all in violation of her Constitutional Rights.

67. In material part, the Defendants' collective deliberate indifference to Decedent's serious medical need precluded the prompt medical attention that would have prevented her death.

**COUNT I**
**42 U.S.C. § 1983**
**PLAINTIFF V. OFFICER RYEN, OFFICER MESCALL,**
**AND JOHN AND JANE DOES**

68. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

69. The above-averred violations of Decedent's Constitutional rights under the Fourth and Fourteenth Amendments occurred as a result of Officers Ryen, Officer Mescall, and John and Jane Doe's ("Defendant Probation Officers") deliberate indifference to Decedent's serious medical need.

70. Decedent's death was foreseeable to the Defendant Probation Officers when they removed Decedent from her home and transferred her to CCJ while she was exhibiting obvious signs of a serious medical need.

71. Indeed, the Defendant Probation Officers were explicitly informed by their superior that Decedent's condition could require emergent medical treatment or hospitalization.

72. The Defendant Probation Officers used their authority as Clearfield County Adult Probation Officers in a manner that created a significant risk of harm to Decedent that would not have otherwise existed which led to her death.

73. The Defendant Probation Officers acted with a degree of culpability that shocks the

conscience.

74. The Defendant Probation Officers conduct violated Decedent's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

75. As a result of the violation of her Constitutional rights, Decedent suffered death, and related harms, including but not limited to pain and suffering, and lost earning capacity.

**COUNT II**
**42 U.S.C. § 1983**
**PLAINTIFF V. WARDEN COLLINS AND CLEARFIELD COUNTY**

76. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

77. The above-averred violations of Decedent's Constitutional rights under the Fourth and Fourteenth Amendments occurred as a result of the long-standing customs, policies, and practices of Clearfield County, and its policy making official, Warden Collins (collectively "Defendants").

78. These customs, policies and practices included, but were not limited to Defendants':

   a. Failure to train jail staff and corrections officers to detect, evaluate, and/or decrease the risk of death of inmates suffering from illnesses and/or medical emergencies;

   b. Failure to promulgate or implement procedures for the treatment of inmates suffering from illness and/or medical emergencies and the prevention of death of such inmates;

   c. Failure to promulgate or implement procedures for the timely and adequate evaluation of ill inmates and/or those suffering from medical emergencies;

   d. Failure to provide medical professionals qualified to treat the medical needs of ill inmates and/or those suffering from medical emergencies, and to ameliorate the risks of death in those inmates; and

   e. Failure to maintain adequate written policies and procedures for the recognition and treatment of inmate illnesses and/or medical emergencies.

79. These failures, comprising Constitutionally defective policies, occurred despite Defendants' knowledge that:

   a. there generally existed a substantial risk of inmate deaths involving illnesses and/or medical emergencies at CCJ;

   b. CCJ had a history of failing to provide timely and/or adequate medical evaluations to its ill inmates and/or those suffering from medical emergencies; and

   c. CCJ had a history of failing to implement policies and procedures to address these concerns which were highly likely to lead to Constitutional violations of the rights of inmates suffering from illnesses and/or medical emergencies.

80. Despite this knowledge, Defendants implemented and maintained these long-standing practices, customs, and/or policies at CCJ that encouraged, endorsed, or permitted failures to provide adequate guarantees of inmate safety and appropriate medical treatment, all in violation of the duties imposed on them by the Fourth and Fourteenth Amendments.

81. Decedent's death, and the associated harms and damages averred hereinabove, occurred as a result of these Constitutionally defective practices, policies, and procedures, all in violation of Decedent's Constitutional rights.

**COUNT III**
**42 U.S.C. § 1983**
**PLAINTIFF V. OFFICERS DALE, CLEVELAND, MARKS-IBBERSON, KNEPP, BARRET, AND JOHN AND JANE DOES**

82. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

83. The Defendant Correction Officers and John and Jane Does were aware that Decedent was suffering from a serious medical need upon her arrival and during her incarceration at CCJ, and that, as a result, she was at a heightened risk of injury and death.

84. Despite their knowledge of the risks faced by Decedent, and/or the facts from which they should have inferred the existence of the risk, the he Defendant Correction Officers and John

11

and Jane Does failed to order or take any measures to ameliorate such risks.

85. The Defendant Correction Officers and John and Jane Does failed to take reasonable measures to guarantee Decedent's safety or provide Decedent with necessary medical treatment in deliberate indifference to her serious medical need.

86. The Defendant Correction Officers and John and Jane Does conduct violated Decedent's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

87. As a result of the violation of his Constitutional rights, Decedent suffered death, and related harms, including but not limited to pain and suffering, and lost earning capacity.

## COUNT IV
## WRONGFUL DEATH
## PLAINTIFF V. ALL DEFENDANTS

88. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

89. Plaintiff claims the right to prosecute this action on behalf of the beneficiaries of Decedent's estate, and to recover all damages allowable under Pennsylvania's Wrongful Death Act, 42 Pa. C.S.A. § 8801, including but not limited to all pecuniary loss of any current or anticipated financial contributions from Decedent, and the guidance, comfort and support her children would have received from her.

## COUNT V
## SURVIVAL
## PLAINTIFF V. ALL DEFENDANTS

90. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

91. Plaintiff claims the right to prosecute this action and recover on behalf of Decedent's estate all damages allowable under Pennsylvania's Survival Act, 42 Pa. C.S.A. § 8302, including but not limited to Decedent's pain, suffering and emotional distress, dread and

apprehension of impending death, loss of life's pleasures, and loss of earnings and earnings capacity.

## JURY TRIAL DEMAND

92. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter judgment in her favor and against Defendants, and to:

a. Award her general and compensatory damages;

b. Award her exemplary damages against all individual defendants;

c. Award her reasonable attorney's fees, and the costs of this litigation pursuant to 42 U.S.C. § 1983 as well as such interest allowed by law, and

d. Provide such other relief as this Court deems just and equitable.

Respectfully submitted,

**WILLIAMS CEDAR LLC**

*/s/ Dylan T. Hastings*
Gerald Williams, Esquire
Dylan T. Hastings, Esquire
One South Broad Street, Suite 1510
Philadelphia, PA 19107
P: (215) 557-0099
F: (215) 557-0673
gwilliams@williamscedar.com
dhastings@williamscedar.com
*Attorneys for Plaintiff*

Dated: February 23, 2022

13

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRINA A. CORSON, individually and as Administratrix of the Estate of KRISTEN E. CORSON,** : <br><br> **Plaintiff,** : <br> v. : <br><br> **CLEARFIELD COUNTY, OFFICER JANELLE MESCALL, OFFICER TIM RYEN, WARDEN GREGORY COLLINS, OFFICER NOVA DALE, OFFICER LEO CLEVELAND, OFFICER HEIDI MARKS-IBBERSON, OFFICER TYLER KNEPP, OFFICER AUSTIN BARRETT, OFFICER NANNETTE RENCHEN, JOHN AND JANE DOES 1-20,** : <br><br> **Defendants.** : | **CIVIL ACTION** <br><br> **No. 3:21-cv-00616-SLH** <br><br> **JURY TRIAL DEMANDED** |

## CERTIFICATION OF SERVICE

I, Dylan T. Hastings, Esquire, certify that on this date that I caused a true and correct copy of the foregoing Amended Complaint to be served on all counsel of record via ECF.

*/s/ Dylan T. Hastings*
DYLAN T. HASTINGS

Dated: February 23, 2022